In the Matter of the Petition for Partition of the Intestate Estate of George W. Reed.*

*Partition—Intestate Real Estate—Will—Devise—Fee Simple—*
*Life Estate—Words of Limitation—Intention of Testator*
*—Introductory Clause of Will—Words Showing*
*Intention—Delaware Cases.*

1. While it may be true that in most cases where there is a general devise of land without words of limitation it was the intention of the testator that a fee simple estate should pass, it is equally true that such intention must be found in the language of the will and not in conjecture or speculation.

2. The words "one half of the farm where I now reside," are merely descriptive of the property devised, and in no sense determine the estate that should pass; nor does the word "descend," indicate that the testator intended that a fee simple estate should pass.

3. The testator devised to his daughter one-half of the farm upon which he resided "to her heirs if she should have any children; if she should have none it is to descend to the oldest son of John W. Reed (George W. Reed), if he should have any lawfully begotten at her death if he should have no male heirs it is to descend to all her heirs alike, except to John W. Reed himself. But shall not prohibit his heirs from receiving his part." *Held*, that George W. Reed took only a life estate in the land so devised.

4. In holding that a fee simple estate passed when there was a devise without words of limitation, the Courts have been influenced both by the introductory clause of the will which showed the intention of the testator, and by the fact that the testator had, in bequests to other heirs, shown that in no event did he intend that they should take any other part of his estate.

5. The Delaware cases analyzed.

6. In the construction of a will, the intention of the testator, as expressed in it, and collected from the whole of it, must prevail, provided it can be carried into effect consistently with the rules of law.

(*September,* 1906.)

Nicholson, Ch. and Pennewill, J., sitting.

*James H. Hughes* for petitioner.

*Charles H. LeFevre* opposed.

*Note.—The above case was decided in the Orphans' Court, and is believed to be of such importance and interest to the Bar that it should appear in the law reports of the State.

Orphans' Court, Kent County, Adjourned September Term, 1906.

PENNEWILL, J., delivering the opinion of the Orphans' Court:

On the twentieth day of January, 1906, Emma Reed Masten filed in this Court a petition praying for the partition, among the parties entitled, of certain real estate situated in this County, and represented to be the intestate real estate of George W. Reed, and of which he died seized in fee simple on or about the fourteenth day of December, 1905.

On the twenty-third day of April, 1906, Samuel W. Smith, a grandson, and one of the heirs at law, of William Reed, deceased, filed an answer to the petition above mentioned, representing that the said George W. Reed was not at the time of his death, or at any other time, seized of said real estate in fee simple, but in fact had only a life estate therein.

We are asked, therefore, to dismiss the petition filed by Emma Reed Masten; and it is agreed that such an order shall be made if the Court shall be of the opinion that the said George W. Reed had only a life estate in the real estate mentioned in the petition.

A determination of the question presented by this case involves a consideration of the last will and testament of the said William Reed, deceased, dated March eleventh, 1839, which was duly proved before the Register of Wills in Kent County, and allowed by him January twenty-ninth, 1841.

The said last will and testament is in the following language:

" The Last Will and Testament of William Reed of Mispillion Hundred in the County of Kent and State of Delaware. I, William Reed, considering the uncertainty of this mortal life, and being of sound mind and memory (blessed be the Almighty

God for the same) do make and publish this my last will and testament in manner and form following (that is to say) "First; I give and bequeath to my daughter Nancy, one third of the income of all my land to support my wife Rachael Reed during her natural life if my wife will be satisfied with the same. Item. I give and bequeath to Elizabeth Hughes, Susan Smith and Rachael Hughes, the farm where my son Jno. W. Reed now lives East of the Cross Fence it being the same land that my father willed to me before his decease, to them, their heirs and ensigns forever. Item. I give and bequeath to my Daughter Nancy Reed one-half of the farm where I now reside west of the cross fence it being the same land that my father willed to Ebenezer Reed, the Division line to start from the Public road where the Gate now stands and then to run directly up to the dwelling house dividing the dwelling house, outhouses and orchards as near as may be, then to continue on as straight a line as can be, so as to give one equal quantity of cleared and wood land to her, her heirs if she should have any children; if she should have none it is to descend to the oldest son, Jno. W. Reed if he ever should have any lawfully begotten at her death if she should have no male heirs it is to descend to all her heirs alike except to John W. Reed himself. But shall not prohibit his heirs from receiving his part. Item. I give and bequeath to my two grand daughters, children of John W. Reed, Nancy Reed and Elizabeth Reed the other half of the farm where I now live but they shall support their father with the necessaries of life, food and clothing and find him comfortable dwelling house with a sufficiency of firewood during his natural life and after his death it shall descend to all his heirs alike if he should have no male heirs that is his lawful heirs to them and their assigns forever. Item. I give and bequeath to my grand daughter Nancy Reed of John W. Reed, six acres more or less that I have taken up to the North east of all my land known by the name of Reed's addition to her, her heirs and assigns forever and lastly, I leave to my daughter Nancy Reed sole Executrix of this my last will and testament hereby revoking all former wills by me made. In witness Whereof I have hereunto set my hand and seal this 11th

day of March in the year of our Lord one thousand eight hundred and thirty-nine.

"Signed, sealed and declared by the above named in the presence of us who at his request and in his presence have subscribed our names.

Witnesses thereunto.

WILLIAM REED.    (Seal)

John B. Reed
Jacob G. Hickman
        her
Elizabeth x Vrimm."
        mark

The particular item involved in this inquiry is number three, in which the testator gives and bequeaths to his daughter Nancy Reed one-half of the farm upon which he resided "to her heirs if she should have any children; if she should have none it is to descend to the oldest son of John W. Reed if he ever should have any lawfully begotten at her death if he should have no male heirs it is to descend to all her heirs alike, except to John W. Reed himself. But shall not prohibit his heirs from receiving his part."

The testator, William Reed, had at the time of making his will, and at the time of his death, four daughters, viz: Elizabeth Hughes, Susan Smith, Rachael Hughes and Nancy Reed; one son, the said John W. Reed; and two grandchildren, daughters of John W. Reed.

Nancy Reed left no children at her death, but there were living at that time two sons, of John W. Reed, the eldest of whom was George W. Reed.

What estate did the said George W. Reed take in the farm devised to the oldest son of John W. Reed by the third item of the will of William Reed? That is the question we are to determine.

The will under consideration was made and proved before the enactment of the statute February twentieth, 1849, (*Rev. Code* 640), which provides that "A devise of real estate in a will,

without words of limitation, shall be construed to pass the fee simple or other the whole estate, or interest, which the testator could lawfully devise in such real estate, unless a contrary intention appear by the will."

The statute, therefore, has no application to this case, and the will of the testator must be construed according to the law in force prior to its passage.

There is no doubt that prior to the passage of the said act a devise without words of limitation passed a life estate only, unless there was something in the will which clearly showed that it was the intention of the testator that a greater estate should pass.

It is not contended that the testator, in the will before us used any words of limitation in the devise to the oldest son of John W. Reed, but it is claimed that without such express language it sufficiently appears from the entire will that it was the intention of the testator that the oldest son of John W. Reed should take a fee simple in the land devised to him.

It is doubtless true, as many courts have said, that in almost all cases where there is a general devise of land without words of limitation it was the intention of the testator that a fee simple estate should pass; but it is equally true, as courts have so often observed, that such intention must be found in the language of the will and not in conjecture or speculation.

It is argued by counsel for the petitioner that the words "one-half of the farm where I now reside," used in the third item, are so general as to comprehend the whole property or estate; and without any words of limitation are sufficient to pass the fee. But we think no authority can be shown to sustain such a proposition. Such language is merely descriptive of the property devised, and in no sense determines the estate that should pass.

Lord Mansfield in the case of *Right vs. Sidebotham* said: "The rule of law, however, is established and certain, that express words of limitation, or words tantamount, are necessary to pass an estate of inheritance. 'All my estate,' or 'All my interest,' will do; but 'all my lands lying in such a place,' is not sufficient.

Such words are considered merely as descriptive of the local situation, and only carry an estate for life."

It is also insisted that the word "descend," used in the third item, indicates that the testator intended that a fee simple estate should pass, but we do not find that such significance has been given to that word in any well considered case.

In the case of *Johnson vs. Marlin*, 10 *Pa. St.* 245, cited by counsel for the petitioner, the Court said: "The testator uses the word "descend" as synonymous with "belong to" or "vest in," which would carry the fee." But Chief Justice Comegys in the case of *Hitch vs. Patton* (hereafter referred to), said "It is a well established rule of law that a devise to one of all the tracts of land *belonging to me*, or that I am possessed of, conveys nothing but a life estate to the devisee; these words have no other signification than mere description of the subject of the devise; in other words the body of the land and not the estate in it." It seems to us that the Court in the case of *Johnson vs. Marlin were* was so strongly impressed with the belief that generally in devises without words of limitation the testator intends to give a fee simple estate, they were diligent and eager to find something in the will to support such belief.

It might be contended that William Reed intended by his will to dispose of all his estate, because he mentions therein all his children and, presumably, all of his property. But in the case of *Doe vs. Lampleugh*, this Court said that even though the will embraced every kind and parcel of the testator's estate, and provided for all his descendants, they did not decide that an intention to dispose of his entire estate so collected from the will should be executed by raising a fee in a case where the testator has failed to use any words capable by construction of passing a fee.

We can find nothing in the will of William Reed from which it could be argued that it was the intention of the testator that the oldest son of John W. Reed should take a fee in the land devised to him, except the fact that it seemed to be the purpose and desire of the testator that John W. Reed should not have any

part of his estate. This fact, it might be insisted, clearly appears from the third item of the will, and such intention and desire might have been defeated if there was an intestacy, as to the real estate in question, after the death of the oldest son of the said John W. Reed.

This thought impressed us very strongly in the early consideration of the case, but upon a careful examination of our own case we became satisfied that such fact, although indicating perhaps the testator's intention, has never been considered alone sufficient to enlarge what would otherwise be but a life estate into a fee simple.

The earliest, and perhaps leading, case upon the subject of devises without words of limitation found in the reports of this State, is that of *Loordry vs. Adams*, 1 *Harr.* 441. This case has been criticised, and its soundness to some extent questioned, in one or two later cases in our Courts; but it has been recognized as an authority in others, and distinctly approved and followed in the late case of *Hitch vs. Patten*, 8 *Houst.* 335. It was the case of *Cordry vs. Adams* to which Justice Houston referred in delivering the opinion in the Court of Errors and Appeals in the case of *Hitch vs. Patten*, when he said: "The decision was known to have had, after deliberate and mature consideration, the sanction of as great a lawyer and as great a judge as ever adorned either the bar or the bench in this State, (I mean Thomas Clayton, then Chief Justice)."

In this case, as well as in the case of *Hitch vs. Patten*, there was an introductory clause in the will which clearly indicated that it was the intention of the testator to dispose of his entire estate, and not to die intestate as to any part of it; and there were also bequests to the other children of the testator, followed by the words "no more of my estate."

In each of those two cases the Court held that under the devise in question a fee simple estate passed.

In reaching such conclusion, however, the Court was influenced both by the introductory clause of the will, and by the fact that the testator had in bequests to other heirs, shown clearly

that *in no event* did he intend that they should take any other part of his estate—which intention would have thwarted by holding that the devise under consideration carried only a life estate, leaving an intestacy as to the remaining interes in the lands so devised.

The Court intimated in these cases, as it was held in the case of *Dodd vs. Doe*, 2 *Houst.* 76, that such an introductory clause would not alone be sufficient to enlarge a general devise without words of limitation into a fee simple; although they did hold, and it is the law of this State, *that such clause taken in connection with the language used in the bequests to other heirs,* showed an unmistakable purpose on the part of the testator that the devisee in question should take an estate in fee.

The case of *Hitch vs. Patten* was an exceedingly important one, involving as it did the title to a large part of the land upon which the town of Bridgeville stands. It was ably argued in the Court below, but exceptionally so in the Court of Errors and Appeals where the plaintiff in error was represented by Hon. N. B. Smithers, who was at that time unquestionably the leading real estate lawyer of this State. But notwithstanding the strength of his argument the law as declared in the opinion delivered by Chief Justice Comegys in the Court below was distinctly approved by the appelate Court, Chancellor Saulsbury dissenting.

In the able and exhaustive opinions delivered by the lower and higher courts in the *Hitch vs. Patten* case, and the other cases therein referred to, we think can be found the general principles of law that must govern and determine the case now before us.

As we have already remarked, there are cases in this State which are somewhat in conflict with the cases of *Cordry vs. Adams* and *Hitch vs. Patten.* In the case of *Dodd vs. Doe*, 2 *Houst.* 76, in which it was held that the introductory clause in the will which indicated that the testator intended to dispose of his entire estate, was not of itself sufficient to enlarge a devise of land without words of limitation, to a fee, the Court said, the case of *Cordry vs. Adams* "has never been considered an authority beyond the special circumstances and ruling of the Court in that case." In the case of *Doe vs. Lampleugh*, 3 *Houst.* 461, it was said

that the Court in the case of *Cordry vs. Adams* had overstepped the limit in determining that a fee simple estate passed under the devise under consideration.

The case of *Doe vs. Alexander*, 2 *Houst*. 234, in which it was held that a life estate only passed, the Court, Gilpin, Chief Justice, delivering the opinion, held that the words "no more of my estate," which terminated the bequests to other heirs, were not sufficient, in connection with the introductory clause, to enlarge the general devise to a fee.

And so, while the case of *Cordry vs. Adams*, having been unqualifiedly approved and followed by our Court of Errors and Appeals in the case of *Hitch vs. Patten*, is no longer open to question, we think the doctrine involved should not be carried beyond the facts and ruling in that case.

The following principles of law are well settled and their application to a devise made prior to the passage of the statute above mentioned will not be denied:

1. The heir at law is not to be disinherited except by express words in the will, or by necessary implication arising from them.

2. A general devise of land, or a devise without words of limitation, gives to the devisee a life estate only, unless an intention is sufficiently expressed or indicated in the will to give a greater estate.

3. In the construction of a will, the intention of the testator, as expressed in it, and collected from the whole of it, must prevail, provided it can be carried into effect consistently with the rules of law on the subject.

Coming now to a consideration of the will of William Reed, which is the one before us, and applying thereto the principles of law above mentioned, and the rulings in the cases above referred to, we notice;

*First.* That there is no introductory clause in this will as there was in the one before the Court in the case of *Cordry vs. Adams*, and in the case of *Hitch vs. Patten*, clearly indicating that the testator intended to dispose of his entire estate.

*Second.* There are devises to other children in which the testator uses the words "heirs and assigns forever," from which it

appears that he had knowledge of the technical and proper words usually employed to carry a fee simple estate.

Assuming that it is perfectly clear from the will before us that the testator intended that his son John W. Reed should not in any event receive any part of his estate, and that the case is, therefore, analogous in that respect to the case of *Cordry vs. Adams* and the case of *Hitch vs. Patten*, yet, it must be remerbered that those two cases were not decided upon that fact alone, but upon that fact taken in connection with the introductory clause of the will. In those cases the Court attached much importance to the introductory clause, and we think it may be fairly assumed that without it the devise there under consideration would not have been held to carry the fee. As we have before said, the Court did hold in the case of *Doe vs. Alexander* that the fact that the testator had in preceding items of his will said that other heirs were to receive "no more of his estate," was not of itself sufficient to express the intention of the testator in favor of a fee in the subsequent devise of real estate without words of limitation.

It is our conclusion, after a careful examination of the entire will of William Reed, and the law applicable thereto, that while the testator may have intended to dispose of his entire estate, George W. Reed, the eldest son of John W. Reed, took only a life estate in the one-half of the farm devised to him by the third item of said will; and he was not, therefore, at the time of his death, seized of said real estate in fee simple as alleged in the petition filed by Emma Reed Masten. To hold otherwise would, we think, be "overstepping the limit," and carrying further than has ever yet been carried by any case in this State, the doctrine that a general devise of real estate without words of limitation may be enlarged to a fee simple by language employed in other parts of the will.

The intention of the testator must and should prevail but it must be collected fairly and clearly from the will itself, and not by conjecture; and it will prevail only when it can be carried into effect consistently with the rules of law on the subject.